DOUG JOHNSON, Plaintiff and Counterdefendant-Appellee, v. TIM BAUMGARDT *et al.*, Defendants and Counterplaintiffs-Appellants.

Second District No. 2—90—1367

Opinion filed July 25, 1991.

Gregory E. Barrett, of Schlueter, Ecklund, Olson, Barrett & Moore, of Rockford, for appellants.

Robert A. Calgaro, of Conde, Stoner & Killoren, of Rockford, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Defendants, Tim and Roy Baumgardt, appeal from an order of the circuit court of Winnebago County which granted the motion for summary judgment of plaintiff, Doug Johnson. The sole issue raised by defendants on appeal is whether the trial court erred in determining that it had no authority to compel the parties to return to arbitration. We reverse and remand.

On March 14, 1990, plaintiff filed a complaint seeking the entry of judgment on an arbitration award. The complaint alleged that the parties entered into an agreement which was dated March 22, 1989. The agreement was attached to the complaint as exhibit A. It was three pages long and was prepared by Gregory Barrett, defendants' attorney. The agreement provided that defendants agreed to purchase "all of [plaintiff's] right, title and interest in and to ROCKFORD CARBIDE DIE AND TOOL, LTD. consisting of 50 shares of stock for the sum of $85,000.00." The contract further provided that defendants would pay the sum of $23,323 at closing and would pay the remaining balance of $61,677 in 12 equal monthly installments. In return, plaintiff agreed to complete and sign "such minutes and other documents" necessary to bring the corporate records and minute book current and to execute the documents and instruments necessary to resign from the board of directors and as an officer of the corporation. Plaintiff also warranted that the shares he was selling to defendants had not been pledged, encumbered, sold or otherwise transferred as of the date of closing and further agreed to cooperate with defendants in the execution of all transfers of shares of stock, corporate minutes and resolutions.

The agreement stated that it set forth the entire understanding of the parties and included an arbitration clause which provided:

"In the event a dispute arises between the parties regarding the interpretation of this Agreement, or any other matter related to the purchase herein or its terms, it shall be resolved

by arbitration. If either party determines a dispute should be resolved by arbitration, he shall give notice by delivery or by certified mail to the other party of the nature of the dispute and the name and address of an arbitrator he has chosen. The other party shall, within 14 days thereafter, choose an arbitrator and give notice thereof to the first party and both arbitrators. The two arbitrators shall select a third arbitrator and the written agreement of any two arbitrators shall be binding on both parties. The Circuit Court of Winnebago County, Illinois, shall enforce the decision of the arbitrators on all parties without review of the facts or the means used by the arbitrators for making their decision. The costs and expenses incurred by the arbitrators shall be assessed between the parties as determined by the arbitrators."

Plaintiff's complaint further alleged that a dispute arose between the parties concerning whether defendants were obligated to pay certain sums to plaintiff pursuant to the contract. An arbitration hearing was held February 5, 1990, and the arbitrators entered an award finding that defendants owed plaintiff $56,537.25. A copy of the arbitration award was also attached to the complaint. The award provided, in pertinent part:

"2. The Arbitrators, by majority vote with Arbitrator Reese dissenting, find that the Defendants, TIM BAUMGARDT and ROY BAUMGARDT, are indebted to the Plaintiff, DOUG JOHNSON, on the Agreement, marked as Johnson's Exhibit No. 1 in the sum of $56,537.25.

3. That Attorney Calgaro on behalf of the Plaintiff, has made a Motion to Exclude from evidence any of the matters and defenses as raised in the letter dated January 31, 1990, addressed to Mr. Calgaro from Mr. Barrett. A copy of said letter is attached hereto and incorporated herein by this reference.

4. The Arbitrators with Arbitrator Reese dissenting hereby grant the Motion of Attorney Calgaro and in so doing, exclude from evidence any testimony pertaining to the issues as are set forth in the letter marked as Johnson's Exhibit No. 5.

5. It is to be clearly understood that the defenses and rights as raised on Exhibit No. 5 whether by individually named Defendant or the Corporation, Rockford Carbide Die & Tool Limited, are hereby reserved and the Defendants are en-

titled to raise those defenses and/or allegations at a later date in a separate proceeding if they so elect."

The seven-page letter attached to the arbitration award was signed by Gregory Barrett. The letter stated that, almost immediately after the sale of plaintiff's interest in the business, irregularities began to surface. These "irregularities" included: missing inventory; numerous questionable checks including checks with forged signatures, some of which were cashed by plaintiff or written to a relative of plaintiff; misuse of company funds; and work which was performed by the company but for which no payment was received by the company. The letter concluded that there was "a total of $38,740.87 of discrepancies with regard to this business." The letter further stated that defendants were willing to pay plaintiff the balance due under the terms of the contract, less that amount.

On April 16, 1990, defendants filed their answer to the complaint and a counterclaim to compel arbitration. Defendants admitted the allegations of plaintiff's complaint, but further alleged:

"[T]hat the award of the arbitrators is neither valid nor enforceable for the reason that the aribtrators [sic], with one arbitrator dissenting, refused to hear and decide the entire controversy between the parties, finding that the claims, defenses and set-offs to be raised by the Defendants were not arbitrable under the provisions of the agreement between the parties. The refusal to hear and decide the controversy between the parties renders the award of the arbitrators unenforceable."

Defendants prayed that the court deny plaintiff relief and "order the parties to arbitrate the controversy between them as set forth in the arbitration award and attachment thereto." In their counterclaim, defendants asked that the court enter an order compelling arbitration of those issues.

Plaintiff filed an answer to defendants' counterclaim and later filed a motion for summary judgment, alleging that there were no issues of material fact. Defendants then filed their motion for judgment on the pleadings and/or summary judgment. They alleged that the issue before the court raised by the complaint and counterclaim was solely one of law: whether the matters sought to be raised by defendants as set forth in the letter attached to the arbitration award were arbitrable under the terms of the agreement. Defendants contended that, under the terms of the agreement, plaintiff sold his interest in the corporation of which he was the president and chief operating officer for a price which was agreed upon, taking

into account the assets and financial condition of the corporation. Defendants further argued that they sought to raise matters at the arbitration hearing which, if known at the time they negotiated the purchase of the shares of stock, "would have affected the value of the corporate assets and financial condition of the corporation as well as the value of the shares they were purchasing."

A hearing was held regarding the parties' cross-motions for summary judgment on August 31, 1990. The trial judge noted that he disagreed with the decision of the arbitrators to exclude evidence sought to be introduced by defendants and to "reserve" those defenses. He stated, "they can't piecemeal it and they can't say we will give you an award but we are not going to consider this, this is set for some future date, that would clog up the docket; they have to treat it as a whole down there." Nevertheless, the court granted plaintiff's motion for summary judgment because the agreement provided for binding arbitration. Judgment was therefore entered in favor of plaintiff in the amount of $56,537.25, plus interest from the date of the arbitration award and costs of suit.

Defendants filed a motion to reconsider, arguing that, once the court determined that the parties should have arbitrated an issue, "the court has the duty under the law to enter an order compelling the parties to return to the arbitration hearing so that the matters sought to be raised under the arbitration clause can be heard as a part of the arbitration procedure." A hearing was held regarding the motion, and plaintiff argued that arbitration could not be compelled because plaintiff did not refuse to submit to arbitration. Plaintiff also contended that there was no basis to overturn the arbitration award based on the relevant statute. The trial court agreed, noting that it was not an "appellate court for the arbitrators," and denied defendants' motion. This timely appeal followed.

Defendants argue on appeal that the trial court correctly found that the issues they sought to raise at the arbitration hearing were arbitrable but erred in determining that it did not have the authority to compel arbitration on those issues. In other words, the issue is whether the trial court erred in entering judgment in favor of plaintiff based on an arbitration award where the arbitrators excluded evidence related to defenses to plaintiff's claim at the arbitration hearing. We conclude that the trial court improperly entered judgment in favor of plaintiff under these circumstances.

The purpose of arbitration is to avoid the formalities, delay and expenses of litigation in court. (*Hough v. Osswald* (1990), 198 Ill. App. 3d 1056, 1057.) Arbitration as a means of dispute resolution is

favored and is regarded by courts as an effective and cost-efficient method of resolving disputes. (*United Cable Television Corp. v. Northwest Illinois Cable Corp.* (1989), 128 Ill. 2d 301, 306.) For this reason, wherever possible, arbitration awards should be construed so as to uphold their validity. (*Rauh v. Rockford Products Corp.* (1991), 143 Ill. 2d 377, 386.) "[I]t is well-established that judicial review of an arbitrator's award is intended to be more limited than appellate review of a trial court's decision." *Rauh*, 143 Ill. 2d at 394; *Hough*, 198 Ill. App. 3d at 1057-58.

Our supreme court recently stated:

> " 'Arbitrators are judges chosen by the parties to decide the matters submitted to them, finally and without appeal. As a mode of settling disputes it should receive every encouragement from courts of equity. If the award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error either in law or fact.' " (*Rauh*, 143 Ill. 2d at 394-95, quoting *Burchell v. Marsh* (1855), 58 U.S. (17 How.) 344, 349, 15 L. Ed. 96, 99.)

In light of this policy, an arbitrator's finding should not be disturbed absent a statutory ground for vacating or modifying the award. (See *Rauh*, 143 Ill. 2d at 395.) Also, even gross errors of judgment in law or a gross mistake of fact are not grounds for vacating an award unless the mistakes or errors are apparent upon the face of the award. *Rauh*, 143 Ill. 2d at 393.

In this case, however, we conclude that the arbitrators' errors are apparent upon the face of the award and that there is a statutory ground for vacating the award.

■ First of all, we agree with plaintiff that the trial court correctly determined that it lacked authority to "compel" arbitration. Section 2(a) of the Uniform Arbitration Act (Act) provides:

> "On application of a party showing an [arbitration] agreement ***, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied." Ill. Rev. Stat. 1989, ch. 10, par. 102(a).

Under the Act, then, a trial court is authorized to determine arbitrability if one of the parties denies that it has agreed to arbitrate. (*International Association of Machinists & Aerospace Work-*

*ers, District Lodge No. 140 v. Cheshire/A Xerox Co.* (1984), 125 Ill. App. 3d 350, 353; *Lehman v. Eugene Matanky & Associates, Inc.* (1982), 107 Ill. App. 3d 985, 988.) That is not the situation here as the parties did submit the dispute to arbitration. Therefore, arbitration could not be "compelled" under the statute as the parties both agreed to arbitration.

■ However, at the arbitration hearing, plaintiff made a motion to exclude from evidence any of the matters and defenses raised in the January 31, 1990, letter. This evidence was excluded by the arbitrators. Section 12(a)(4) of the Act provides:

> "Upon application of a party, the court shall vacate an award where:
>
> * * *
>
> (4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or *refused to hear evidence material to the controversy* or otherwise so conducted the hearing, contrary to the provisions of Section 5, as to prejudice substantially the rights of a party." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 10, par. 112(a)(4).)

Section 5 of the Act states, in pertinent part, that the "parties are entitled to be heard, to present evidence material to the controversy and to cross-examine witnesses appearing at the hearing." Ill. Rev. Stat. 1989, ch. 10, par. 105(b).

■■ ■ Section 11 of the Act provides that "[u]pon application of a party, the court shall confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in Sections 12 and 13." (Ill. Rev. Stat. 1989, ch. 10, par. 111.) As relevant here, section 12 of the Act also provides that an "application made under this Section shall be made within 90 days after delivery of a copy of the award to the applicant" (Ill. Rev. Stat. 1989, ch. 10, par. 112(b)), and:

> "[I]f the award is vacated on grounds set forth in clauses (3) and (4) of subsection (a) the court may order a rehearing before the arbitrators who made the award or their successors appointed in accordance with Section 3." Ill. Rev. Stat. 1989, ch. 10, par. 112(c).

Therefore, defendants may properly challenge the arbitration award through a defense to a complaint to confirm the arbitration award (see Ill. Rev. Stat. 1989, ch. 10, par. 111), so long as the challenge was raised within the 90-day limitation period provided by section 12(b) (Ill. Rev. Stat. 1989, ch. 10, par. 112(b)). (See *Best Coin-*

*Op., Inc. v. Clementi* (1983) 120 Ill. App. 3d 892, 898.) In this cause, defendants filed their answer to plaintiff's complaint on April 16, 1990, less than 90 days after the February 5, 1990, arbitration award. The answer alleged the award was neither valid nor enforceable because the arbitrators "refused to hear and decide the entire controversy between the parties, finding that the claims, defenses and set-offs to be raised by the Defendants were not arbitrable under the provisions of the agreement between the parties." Defendants asked the court to order the parties to arbitrate the controversy between them.

Thus, while defendants could not properly seek an order "compelling" arbitration, they did, in their answer, essentially request that the arbitration award be vacated based on the refusal of the arbitrators to hear material evidence and that the controversy be returned to the arbitrators for a rehearing. Their request for this relief was timely and could be granted under section 12 of the Act.

Therefore, the issue is whether the arbitration award should have been vacated because the arbitrators refused to hear evidence material to the controversy. It is apparent from the arbitration award that two of the arbitrators determined that the matters defendants sought to raise in an effort to reduce the amount owed to plaintiff were not subject to arbitration under the terms of the agreement. They determined that these issues were "reserved" and should be raised by defendants at a later date in a separate proceeding.

As the dispute was submitted to arbitration, it was up to the arbitrators to determine the arbitrability of the issues presented. (See *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr* (1988), 124 Ill. 2d 435, 447-50.) The arbitrators' determination, however, is subject to judicial review under section 12 of the Act. See *Donaldson*, 124 Ill. 2d at 450-51; *TDE Ltd. v. Israel* (1989), 185 Ill. App. 3d 1059, 1063.

■■ ■ The agreement of the parties governs which issues are subject to arbitration, and the parties are bound to arbitrate only those issues which the clear language of the agreement, unextended by construction or implication, shows they have agreed to arbitrate. (*Rauh*, 143 Ill. 2d at 387; see also *Konewko v. Kidder, Peabody & Co.* (1988), 173 Ill. App. 3d 939, 945.) Arbitration clauses, however, that provide that all claims "arising out of" or "relating to" an agreement are subject to arbitration have been properly categorized as "generic" arbitration clauses. (*A.E. Staley Manufacturing Co. v. Robertson* (1990), 200 Ill. App. 3d 725, 729; *J&K Cement Construc-*

*tion, Inc. v. Montalbano Builders, Inc.* (1983), 119 Ill. App. 3d 663, 670-71; see also *Donaldson*, 124 Ill. 2d at 444.) A dispute is within the scope of a "generic" arbitration clause if it arises out of the subject matter of the contract. *A.E. Staley*, 200 Ill. App. 3d at 730.

 Once a contract containing a valid arbitration clause has been executed, the parties to the agreement are irrevocably committed to arbitrate all disputes arising under the contract. (*International Association of Firefighters Local No. 23 v. City of East St. Louis* (1990), 206 Ill. App. 3d 580, 585; *TDE*, 185 Ill. App. 3d at 1063.) When a dispute under such an agreement is submitted to arbitration, the arbitrator is empowered to make an award that will fully settle the dispute, and it is presumed that the parties intended that all matters in dispute be decided. *Hollister Inc. v. Abbott Laboratories* (1988), 170 Ill. App. 3d 1051, 1060-61; *Wilcox Co. v. Bouramas* (1979), 73 Ill. App. 3d 1046, 1051.

 ██ In this cause, the arbitration clause stated: "In the event a dispute arises between the parties regarding the interpretation of this Agreement, *or any other matter related to the purchase herein or its terms*, it shall be resolved by arbitration." (Emphasis added.) The "related to" language indicates that this was a generic arbitration clause. A dispute allegedly arose when defendants stopped making the monthly payments due under the terms of the contract because of the "irregularities" detailed in the January 31, 1990, letter drafted by their attorney. These "irregularities" sought to be raised by defendants "related to" the purchase and arose out of the subject matter of the contract. In fact, based on this record, that was the only dispute between the parties.

We recognize that the contract itself did not specifically enumerate the issues defendants sought to raise. It is therefore understandable that two of the arbitrators determined that these issues were not subject to arbitration under the terms of the contract. However, what happened was the arbitrators disregarded the evidence relating to the only dispute between the parties. As stated previously, the purpose of arbitration is to avoid the formalities, delay and expenses of litigation in court. The arbitrators refused to hear defendants' evidence and "reserved" those issues, stating that defendants could raise them at a later date in a separate proceeding, thereby requiring defendants to file a lawsuit to resolve the issues. In this cause, therefore, the arbitrators did not make an award which fully settled the dispute. This was contrary to the agreement of the parties that any dispute "related to" the purchase would be resolved by arbitration and defeated the purpose of arbitration. The trial court, there-

fore, correctly noted that the arbitrators could not "piecemeal" the dispute and could not say that they would not consider part of the dispute.

However, the trial court determined that it had no authority to vacate the arbitration award because the parties agreed to "binding" arbitration. We acknowledge that the agreement states that the court "shall enforce the decision of the arbitrators on all parties without review of the facts or the means used by the arbitrators for making their decision." However, the Act must be deemed part of a contract containing an arbitration clause. (*Kilianek v. Kim* (1989), 192 Ill. App. 3d 139, 142.) The Act sets forth the grounds upon which courts can vacate an arbitration award. (*Kilianek*, 192 Ill. App. 3d at 142.) Under section 12(a)(4) of the Act (Ill. Rev. Stat. 1989, ch. 10, par. 112(a)(4)), the trial court did have the authority to vacate the award, based on the arbitrators' refusal to hear evidence material to the controversy. Unlike the situation in *Rauh,* the record is clear that the arbitrators did exclude material evidence sought to be offered by defendants. (*Cf. Rauh*, 143 Ill. 2d at 389.) The trial court also had the authority to order a rehearing before the arbitrators. (Ill. Rev. Stat. 1989, ch. 10, par. 112(c).) In their answer to plaintiff's complaint, defendants sought this relief. While defendants on appeal have used the wrong terminology in arguing that the trial court erred in failing to "compel" arbitration, they are essentially seeking a rehearing before the arbitrators.

In conclusion we reverse the judgment of the trial court, and we remand the cause to the trial court with directions that the court enter an order vacating the arbitration award and ordering a rehearing before the arbitrators consistent with this opinion.

Reversed and remanded with directions.

INGLIS and BOWMAN, JJ., concur.